**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| BRENDA VITALIS, | ) |
| | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )   **Civil Action No. 2:25-cv-00217-NT** |
| | ) |
| CPORT CREDIT UNION, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendant | ) |

**DEFENDANT CPORT CREDIT UNION'S MOTION TO DISMISS THE COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW**

Defendant cPort Credit Union ("cPort") moves this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiff's four-count Complaint (ECF No. 1). The reason for this motion, as set forth more fully in the incorporated memorandum of law, is that the Complaint fails to state a claim upon which relief may be granted, and it should therefore be dismissed.

**INTRODUCTION**

Plaintiff Brenda Vitalis ("Plaintiff") brings this civil action in an attempt to recoup from cPort the $57,000 that Plaintiff withdrew from her own checking account before then depositing it in an unknown ATM machine at the direction of a third-party fraudster with whom she was privately communicating. The law draws a clear line with respect to the liability of financial institutions under circumstances such as these and, here, the particular circumstances alleged by Plaintiff do not impose liability. That Plaintiff fell victim to this scam is unquestionably tragic;

1

however, absent adherence to this line of liability, financial institutions would effectively become insurers for any and every instance in which a customer does something regrettable with their own money.

## BACKGROUND

The Complaint and its attachments allege the following well-pleaded facts.[1] *See, e.g.,* *Lavigne v. Great Salt Bay Comm. Sch.*, 2:23-cv-00158, 2024 WL 1975596 (D. Me. May 3, 2024) (considering, on a motion to dismiss, the facts alleged in both the complaint and its attachments).

On April 30, 2024, Plaintiff spoke on the phone with an individual claiming to be a representative from PayPal and purporting to be named "Alex."  Complaint ¶¶ 26, 54 & Ex. A. Alex falsely informed Plaintiff that Plaintiff had made a $599 payment to GoFundMe and promised that he would refund that payment by making two $300 payments into Plaintiff's bank account. *Id*. ¶¶ 27, 54 & Ex. A.  Alex proceeded to deceive Plaintiff into following his instructions. *Id*. ¶ 28.  While still on the phone with Plaintiff, Alex instructed Plaintiff to install software on her computer, which she did. *Id*. ¶ 29.  That software permitted Alex to gain access to the Plaintiff's computer, where, while still on the phone with Alex, Plaintiff proceeded to set up online banking with Alex's help. *Id*. ¶¶ 29, 54 & Ex. A.  Plaintiff did what the fraudster asked because she thought Alex was helping her get a refund. *Id*.  ¶ 29.

While still on the phone with Alex and looking at her checking account online, Plaintiff "suddenly" saw that $30,000 had been added to her checking account, with the name CHASE appearing next to the deposit. *Id*. at Ex. A.  Plaintiff spoke to Alex about this $30,000 deposit, and Alex told Plaintiff that Plaintiff had made a mistake, resulting in $30,000 having been transferred to her account rather than the $300 refund payment. *Id*. ¶¶ 38, 54 & Ex. A.  Alex told Plaintiff

---

[1] When evaluating a Rule 12(b)(6) motion to dismiss, the court "accept[s] as true all well-pleaded facts alleged in the complaint." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021).

that, in order to fix her mistake, Plaintiff would need to take out the cash and return it to a special ATM. *Id*. ¶¶ 38, 54 & Ex. A. Later that day and following Alex's instructions, Plaintiff herself took $20,000 out of her checking account and deposited the money in an ATM. *Id*. ¶¶ 38, 54 & Ex. A. On May 1, Plaintiff herself took another $9,000 out of her checking account and deposited it in the ATM. *Id*. ¶¶ 40, 54 & Ex. A.

Plaintiff continued to comply with Alex's instructions again the next day. On May 2, Plaintiff spoke with Alex again, and he informed Plaintiff that there had been yet another mistake because, according to Alex, most of the money that Plaintiff had already deposited in an ATM was now back in Plaintiff's checking account and would need to be returned to the ATM once again. *Id*. ¶¶ 41, 54 & Ex. A. Plaintiff herself therefore withdrew another $28,000 from her checking account and deposited it in the special ATM. *Id*. ¶¶ 41, 54 & Ex. A.

In actuality, "Alex" was a fraudster. *Id*. ¶¶ 1, 26-27, 54 & Ex. A. And, as it turns out, on April 30, 2024—after having given Alex access to her computer and as she was staring at her online banking account while on the phone with him—Alex had transferred the initial $30,000 "overpayment refund" from Plaintiff's Home Equity Line of Credit ("HELOC") to Plaintiff's savings account and then to her checking account. *Id*. ¶¶ 33(a)-(b), 54 & Ex. A. And, in actuality, on May 2, 2024, it was Alex who had transferred another $28,000 from Plaintiff's HELOC to her savings account and then to her checking account. *Id*. ¶¶ 33(c)-(d), 54 & Ex. A.

On May 8, 2024—six days after she deposited cash from the last of her HELOC funds in an unknown ATM—Plaintiff went to a cPort branch office to seek clarification regarding her funds. *Id*. ¶ 48. Learning that funds from her HELOC had been transferred to her accounts, Plaintiff realized at this time that she had been defrauded. *Id*. ¶¶ 49-50. Plaintiff reported the fraud

to law enforcement.  *Id*. ¶ 52. Plaintiff has since learned that the fraud to which she fell victim is

a common kind of scam about which there is a Wikipedia page.  *Id*. at Ex. C.

Plaintiff also alleges that cPort continues to report the debt that she owes on her HELOC

to consumer reporting agencies.  *Id*. ¶ 83.

**LEGAL STANDARD**

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff

must set forth facts sufficient to state a legal claim on which relief could be granted."  *Giragosian*

*v. Bettencourt*, 614 F.3d 25, 28-29 (1st Cir. 2010).  In evaluating the sufficiency of the Complaint,

this Court must first separate the Complaint's factual allegations, which are taken as true, from its

conclusory legal allegations, which need not be credited.  *See, e.g.*, *Guadalupe-Báez v. Pesquera*,

819 F.3d 509, 514 (1st Cir. 2016); *see also Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021)

(explaining that a court "need not credit a plaintiff's '[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements'").  "[W]hether the well-pleaded facts,

taken in their entirety, permit 'the reasonable inference that the defendant is liable for the

misconduct alleged,'" *Guadalupe-Báez*, 819 F.3d at 514*, is a higher standard than a "probability

requirement,'" demanding more than an unadorned, the-defendant-unlawfully-harmed-me

accusation,'" *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth*., 4 F.4th 63, 70 (1st Cir. 2021)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Dismissal is therefore proper when, as here,

"the factual allegations in the complaint are too meager, vague, or conclusory to remove the

possibility of relief from the realm of mere conjecture.'" *Alston*, 988 F.3d at 571.

**ARGUMENT**

**A.  The Electronic Fund Transfer Act (Count I)**

4

Plaintiff alleges that the transfers made from her HELOC to her savings account, and then from her savings to checking account, were "unauthorized transactions" in violation of 15 U.S.C. § 1693f(f)(2) and that cPort therefore violated statutory requirements set forth in Section 1693f. Complaint ¶¶ 33, 69-75.  Contrary to her contentions, Plaintiff fails to state a claim under the Electronic Fund Transfer Act ("Reg E") because the transfers made from her HELOC, to her savings, and then checking account—even if those transfers were made by "Alex"—do not constitute "unauthorized transactions" within the meaning of Reg E.

Reg E, *see* 15 U.S.C. §§ 1693-1693r, requires a financial institution to investigate an "alleged error" and provisionally credit a consumer's account when such an "error" consists of "an unauthorized electronic fund transfer," *see* 15 U.S.C. § 1693f(f) (defining what constitutes an act of "error" for the purposes of Section 1693f).  Reg E defines an "unauthorized electronic fund transfer" as:

> an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer <u>and from which the consumer receives no benefit</u>

15 U.S.C. § 1693a(12) (emphasis supplied).  Here, the transfers that Plaintiff disputes were made to checking and savings accounts in Plaintiff's name and ownership; thus, those transfers are not "unauthorized" transfers because Plaintiff benefited from those transactions.  Even setting aside the definition of "unauthorized" transfers, Plaintiff suffered no loss as a result of the allegedly fraudulent transfers made to her savings and checking accounts.  Instead, the transfers from which Plaintiff suffered a loss were her own transactions, wherein she withdrew money from her own checking account as cash and deposited that cash in an ATM.  Plaintiff does not contend, nor could she, that her own cash withdrawals and deposits are subject to Reg E.

Plaintiff therefore fails to state a claim under Reg E, and Count I should be dismissed.

5

### B. The Fair Credit Reporting Act (Count II)

Plaintiff alleges that cPort violated 15 U.S.C. § 1681s-2(a) by furnishing inaccurate information to consumer reporting agencies and failing to provide notice to consumer reporting agencies that such information was disputed. Complaint ¶¶ 83(a)-(c). Plaintiff alleges that the information was inaccurate because the HELOC is not a "legitimate debt obligation" when it was the result of a fraudulent scheme. *Id*. ¶¶ 85(a)-(d).

These allegations fail to state a claim under the Fair Credit Reporting Act. Plaintiff's arguments in the Complaint that her HELOC account balance is not a legitimate debt obligation are conclusory statements that the Court should disregard, *see Alston*, 988 F.3d at 571, and Plaintiff has otherwise failed to plausibly allege that cPort reported inaccurate information to any consumer reporting agencies. Plaintiff's decision to take out the HELOC was not related to or contemporaneous with the fraud, and cPort's duty to report to consumer reporting agencies is a consequence (and requirement of) that independent loan relationship between cPort and Plaintiff. The fact that cPort is now aware that Plaintiff used the HELOC for the unfortunate purpose of complying with the instructions of a third-party fraudster does not equate to "actual knowledge" or "inaccuracy" of reporting, and the Court should disregard Plaintiff's conclusory argument to that end in the Complaint. *See* Complaint ¶ 86(a)-(d).

Plaintiff's conclusory allegations that cPort furthermore violated 15 U.S.C. §§ 1681s-2(a) and 1681s-2(b) by failing to provide notice to reporting agencies or to conduct an investigation, *see* Complaint ¶¶ 83-84, likewise fail for the same reason: Plaintiff has no claim for damages for these purported failures given that she has failed to allege any reporting of "inaccurate" information.[2]

---

[2] The June 2024 email from cPort to Plaintiff, through her counsel, reflects cPort's investigation into this matter and contradicts Plaintiff's contention that cPort did not conduct an investigation. Complaint at Ex. B. Plaintiff attached

Plaintiff has failed to state a claim under the Fair Credit Reporting Act, and Count II should be dismissed.

## C. Fair Credit Billing Act (Count III)

Plaintiff contends that the "unauthorized charges against Plaintiff's HELOC qualify as a 'billing error' under 15 U.S.C. § 1666(b)(1) because they represent an extension of credit not made by Plaintiff or anyone authorized by Plaintiff." Complaint ¶ 94. This is a conclusory statement that should be disregarded by the Court, *see Alston*, 988 F.3d at 571, and it also misrepresents the definition of a "billing error" under 15 U.S.C. § 1666(b)(1).

Title 15 U.S.C. § 1666(b)(1) defines a "billing error" as "[a] reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement." First, Plaintiff was given the extension of credit by way of the HELOC separate from and prior to the fraudster having called her. Second, Plaintiff has not alleged that there was anything on her statement that reflects an "extension of credit which was not made to" her as the obligor, nor does Plaintiff allege that the amount is inaccurate. Instead, Plaintiff merely alleges in conclusory fashion that the "unauthorized" charges constitute billing errors. Absent alleging a "billing error," Plaintiff has no claim under 15 U.S.C. § 1666, and Count III should be dismissed.

## D. Unjust Enrichment (Count IV)

Plaintiff finally alleges a claim for unjust enrichment on the basis that cPort is "collecting interest on the fraudulent HELOC advance and treating Plaintiff as liable for repayment of the unauthorized transactions." Complaint ¶ 97.

---

this email to her Complaint, and this Court should disregard Plaintiff's conclusory allegations to the contrary. *See Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (quoting *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 229 n.1 (1st Cir. 2013)).

To establish a claim for unjust enrichment, Plaintiff must show that (1) she conferred a benefit on cPort; (2) that cPort had appreciation or knowledge of the benefit; and (3) cPort's acceptance or retention of the benefit was "under such circumstances as to make it inequitable for cPort to retain the benefit without payment of its value." *Maine Eye Care Assocs. P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707 (emphasis supplied). Here, Plaintiff has failed to state a claim for unjust enrichment because she has not pled any facts suggesting that cPort, now retaining the benefit of repayment with interest, did not uphold its end of the contract by providing Plaintiff with the HELOC. Indeed, Plaintiff did receive "payment of the value" of the benefit she now bestows upon cPort, which was her receipt of the HELOC funds that she withdrew herself and deposited in an ATM. That the money ultimately did not "benefit" Plaintiff by virtue of the fact that she tragically fell victim to a fraud does not change the fact that cPort lent Plaintiff the money. In short, Plaintiff was "enriched," and she does not allege that cPort retained a benefit "without payment of its value." *Id*. In fact, she alleges the opposite: she alleges that she not only received but withdrew the HELOC funds.

Moreover, and as already stated, Plaintiff applied for the HELOC prior to speaking with "Alex" on the phone, and her obligations on the loan already existed prior to the fraudster's actions. This is not a situation in which the fraudster applied for the HELOC in her name; Plaintiff entered into the loan contract on her own accord.

Plaintiff has failed to state a claim for unjust enrichment, and Count IV should be dismissed.[3]

---

[3] Alternatively, should the Court conclude that dismissal of Plaintiffs' federal law claims is warranted, this Court may decline to exercise its supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) (finding an abuse of discretion for a district court to retain jurisdiction over remaining pendent state law claims "unless doing so would serve 'the interests of fairness, judicial economy, convenience, and comity'").

**CONCLUSION**

For all of the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief can be granted.

Dated: June 30, 2025

/s/ Susan M. Weidner
Christopher L. Brooks
Susan M. Weidner
Attorneys for Defendant cPort Credit Union

Drummond Woodsum
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
Tel: (207) 772-1941
Fax: (207) 772-3672
cbrooks@dwmlaw.com
sweidner@dwmlaw.com

9