**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| BRENDA VITALIS, | ) |
| | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) **Civil Action No. 2:25-cv-00217-LEW** |
| | ) |
| CPORT CREDIT UNION, | ) |
| | ) |
| | ) |
| | ) |
| Defendant | ) |

**DEFENDANT CPORT CREDI UNION'S REPLY IN SUPPORT OF MOTION TO DISMISS**

1.  **The Complaint Fails to State a Claim Under the FCBA, Because the HELOC Transfers Were Made to the Obligor on the HELOC: Plaintiff.**

There is no legal support for Plaintiff's theory that cPort's accurate billing statement reflecting the transfers from Plaintiff's HELOC to her own deposit accounts constituted a "billing error" under the FCBA. *See* ECF No. 10 at 6-7.) Plaintiff's characterization of those transfers as "unauthorized," *id.*, erroneously conflates the language of the EFTA with the FCBA. Unlike the EFTA, the FCBA does not define a "billing error" with reference to whether a transaction was authorized, but rather, with reference to who received the funds. Specifically, the definition of "billing error" on which Plaintiff relies, *see id.* at 6, states that a billing error consists of "[a] reflection on a

1

statement of an extension of credit which was not made <u>to the obligor</u> . . . ." 15 U.S.C.
1666(b)(1) (emphasis added).[1]

The alleged "extensions of credit" that form the basis of Plaintiff's FCBA claim –
the "transfers" from Plaintiff's HELOC – were indisputably made to the obligor on the
HELOC: that is, Plaintiff. The Complaint itself alleges that the transfers from Plaintiff's
HELOC went to Plaintiff's own deposit accounts. *See* ECF No. 10 at 2 (noting that the
initial $30,000 was "advanced from her [HELOC] into her savings account," and an
"additional $28,000 HELOC advance was made and likewise moved into her deposit
accounts"). There is also no dispute that Plaintiff retained control over her deposit
accounts. *See* ECF No. 1 ¶¶ 38-41. That Plaintiff was subsequently lured into <u>further</u>
transferring those funds to a fraudster does not change the fact that the only extensions of
credit at issue in this case – the transfers from her HELOC – were sent to her own deposit
accounts. cPort's accurate recording of these transfers on Plaintiff's HELOC billing
statement does not reflect a "billing error" under the FCBA. Count III should be
dismissed.

2.    **Plaintiff's EFTA Claim Should Be Dismissed, Because the Only Allegedly
      Unauthorized Transfers Were Made to Plaintiff's Own Deposit Account.**

As with her FCBA claim, Plaintiff's EFTA likewise depends on a mismatch
between the factual allegations in her Complaint and the obligations imposed by that
statute. Again, Plaintiff does not allege that the transfers that <u>actually caused her loss</u>
were unauthorized. Rather, the facts alleged in the Complaint are that Plaintiff herself
withdrew the funds from her accounts and gave them to the fraudster. *See* ECF No. 1 ¶¶

---

[1] Similarly, although not referenced by Plaintiff, the regulatory definition provides that a "billing error"
includes a "reflection on or with a periodic statement of an extension of credit that is not made to the
consumer . . . ." 12 C.F.R. § 226.13(a)(1).

38, 40, 41, 54; *see generally* ECF No. 1-1. In other words, at the conclusion of the allegedly "unauthorized" (i.e., hacked) transfers – the April 30 transfers from Plaintiff's HELOC to her savings account and then to her checking account, and the May 2 transfers from Plaintiff's HELOC to her savings account and then to her checking account, see ECF No. 1 ¶ 33 – Plaintiff retained full ownership and control over the transferred funds.[2] Accordingly, the transfers were not ones in which Plaintiff "receive[d] no benefit." 15 U.S.C. § 1693a(12).

Plaintiff's argument that this straightforward reading of the statute "produces absurd results" is illogical. ECF No. 10 at 11. Plaintiff hypothesizes a "net-negative movement" of "$30,000 out of a HELOC but only $20,000 into a deposit account," and argues that under cPort's interpretation, the $30,000 loss would still be a "'benefit' because of the deposit side of the entry." ECF No. 10 at 11. Plaintiff is wrong, and it's worthwhile to linger on this hypothetical to explain how Plaintiff misreads the statute. For starters, as noted above, a "transfer" out of a HELOC is not subject to ETFA in the first place. To clean up Plaintiff's hypothetical and keep it in the EFTA context, one might imagine a transfer of $30,000 out of a savings account and an associated transfer of only $20,000 into a checking account. More to the point, though, Plaintiff's hypothetical omits the critical transfer that <u>would</u> be subject to the EFTA: the transfer of the missing $10,000 (i.e., the loss) which presumably went to the hypothetical fraudster. It would be

---

[2] It also bears noting that the alleged "transfers" out of Plaintiff's HELOC are not subject to the EFTA. An "electronic fund transfer" under the EFTA, 15 U.S.C. § 1693a(7), is a transfer in which a financial institution is authorized or instructed to "debit or credit an account." "Account," in turn, is defined as "a demand deposit, savings deposit, or other asset account (<u>other than an occasional or incidental credit balance in an open end credit plan as defined in [15 U.S.C. § 1602(i)]</u>)." 15 U.S.C. § 1693a(2) (emphasis added). A home equity line of credit, like Plaintiff's HELOC, is an open end credit plan, not a deposit or savings account of any kind. *See Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1007 (N.D. Ill. 2009) ("Plaintiffs' home equity line of credit was an open end credit plan of the type explicitly exempted from coverage of the EFTA . . . . Moreover, it was not any sort of 'asset account'; it was a credit account.").

that $10,000 outgoing transfer, not the transfers in between the hypothetical person's accounts, that would cause a detriment to the plaintiff, and would thereby constitute an "unauthorized electronic fund transfer" under the EFTA. But the transfer of the $20,000 from the savings to the checking account would not cause any loss, and therefore would not be subject to the EFTA.

Here, of course, there was no "unauthorized" loss – Plaintiff does not dispute that she voluntarily (albeit very unfortunately) withdrew the funds from her checking account and gave them to the fraudster. Rather, the only "unauthorized" transfers were the internal transfers between Plaintiff's own deposit accounts.

Finally, the cases cited by Plaintiff are inapposite, because they all involved situations where the transfers that caused the plaintiffs' losses were unauthorized. For instance, in the case that Plaintiff primarily relies on, *Moore v. JPMorgan Chase Bank, N.A.*, third parties gained unauthorized access to the plaintiffs' accounts and made a series of unauthorized transfers, including two transfers from the plaintiffs' checking account to accounts held by the third parties. No. 22-cv-01849-JSC, 2022 WL 16856105 (N.D. Cal. Nov. 10, 2022). The same is true of the other cases cited in Plaintiff's Opposition, none of which appears to have involved losses that were the result of a voluntary act by the plaintiff, but rather, situations where the bad actor itself transferred the funds away from the plaintiff's account without authority to do so. *See also New York ex rel. James v. Citibank, N.A.*, 763 F. Supp. 3d 496, 505 (S.D.N.Y. 2025) (noting that the complaint in that case alleged that scammers sometimes consolidated consumer funds spread across multiple accounts "before wiring the total to one of [the scammers'] dummy accounts at another bank"). Here, in contrast, the only transfer that actually

4

caused Plaintiff a loss was undertaken by her own volitional act: withdrawing the money from her checking account as cash and giving it to a fraudster.

For the foregoing reasons, as well as those set forth in cPort's Motion to Dismiss, Plaintiff's EFTA claim (Count I) should be dismissed.

**3.      Plaintiff's Complaint and Exhibits Affirmatively Disprove Her FCRA Claim.**

In light of Plaintiff's clarification that she is bringing a claim only under 15 U.S.C. § 1681s-2(b), not § 1681s-2(a),[3] the timeline of the dispute resolution process is critical. Section 1681s-2(b) creates a private right of action only for a furnisher's conduct <u>after</u> the consumer has disputed the information to a CRA. *See Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 35-36 & n.8 (1st Cir. 2010) (setting forth a furnisher's post-CRA-dispute obligations, and noting that "[a] notice of disputed information provided directly by the consumer to a furnisher does not trigger a furnisher's duties under § 1681s-2(b)").

The Complaint alleges the following timeline:

- The incident occurred in April/May of 2024, ECF No. 1 ¶¶ 26-41.

- On May 8, 2024, Plaintiff verbally notified cPort of the issue on May 8, 2024, *id.* ¶ 48;

- In "May 2024," cPort allegedly furnished inaccurate information to the CRAs, *id.* ¶ 85(a);

- On June 6, 2024, Plaintiff sent a written letter to cPort, *id.* ¶ 54 & Ex. A, and on June 27, 2024, Defendant sent a fulsome written response, *id.* ¶ 58 & Ex. B; and

- On December 12, 2024, Plaintiff disputed the accuracy of the HELOC account information by sending letters to Equifax and TransUnion, *id.* ¶ 81; and

- At some point, the CRAs notified cPort of the dispute, *id.* ¶ 82.

---

[3] Plaintiff's Complaint alleges that cPort "violated 15 U.S.C. § 1681s-2(a)" in various ways. ECF No. 1 ¶ 83. cPort's confusion is understandable.

It's clear what is missing from these allegations: any concrete factual allegations relating to cPort's response to the CRAs' notice of dispute.

Plaintiff argues that cPort "kept furnishing the HELOC as a legitimate, [current] account – without indicating it was disputed – even after notice of the fraud and multiple written disputes." ECF No. 10 at 15 (citing ECF No. 1 ¶¶ 85(a), 85(d), 86(d)). To be clear: the Complaint does not allege this. Rather, the Complaint's only allegation of a credit report listing the HELOC as an undisputed account is the alleged May 2024 report: six months before Plaintiff allegedly disputed the charge with the CRAs in December of 2024. ECF No. 1 ¶¶ 81, 85(a).

Moreover, as to Plaintiff's accusation that cPort failed to conduct a reasonable investigation, the documents attached to Plaintiff's own Complaint belie her claim. Under Section 1681s-2(b), "absent a showing of actual inaccuracy" on an investigation, a plaintiff's claim against a furnisher for unreasonable investigation "fails as a matter of law." *Chiang*, 595 F.3d at 37. The First Circuit has "emphasize[d] that . . . a plaintiff's required showing is factual inaccuracy, rather than the existence of disputed legal questions." *Id.* at 38. Furnishers "are neither qualified nor obligated to resolve matters that turn on questions that can only be resolved by a court of law." *Id.* (quotation marks omitted).

cPort's response to Plaintiff's June 6, 2024 letter plainly reflects a reasonable investigation of the underlying facts. cPort acknowledged that Plaintiff appeared to have been the victim of a fraud, and explained that because Plaintiff had given the fraudsters remote access to her own computer, cPort was not able to detect the unauthorized access to her online account. ECF No. 1-2 at 1-2. cPort further indicated that its tellers had in

fact inquired with Plaintiff about the subsequent cash withdrawals from her deposit account – which Plaintiff made herself – and noted that Plaintiff "informed the tellers . . . that it was personal and none of [cPort's] business." ECF No. 1-2 at 1. cPort further explained why Plaintiff was nonetheless liable for the transfers under the law. Plaintiff may disagree with cPort's <u>legal</u> conclusion as to where liability lies, but there can be no reasonable dispute that cPort's <u>factual</u> investigation was reasonable and adequate. Section 1681s-2(b) does not require more. *See Chiang*, 595 F.3d at 37-38.

For the foregoing reasons, as well as those set forth in cPort's Motion to Dismiss (ECF No. 7), Plaintiff's Complaint should be dismissed.[4]

Dated:  September 19, 2025                    */s/ Oliver Mac Walton*
                                             Christopher L. Brooks
                                             Oliver Mac Walton

Drummond Woodsum
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
Tel:  (207) 772-1941
Fax:  (207) 772-3672
cbrooks@dwmlaw.com
owalton@dwmlaw.com

---

[4] Plaintiff concedes that her claim for unjust enrichment (Count IV) should be dismissed, but she suggests that such a dismissal should be "without prejudice." ECF No. 10 at 17-18. However, Plaintiff does not dispute the arguments set forth in cPort's Motion to Dismiss as to why her unjust enrichment claim fails as a matter of law, and moreover, she appears to agree that her claim fails "based on further review of the relevant law." ECF No. 10 at 18. Accordingly, the Court should dismiss Count IV on the merits, with prejudice.